IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:22-CR-00246 |
| v. | (Chief Judge Brann) |
| NICHOLAS PERKINS, | |
| Defendant. | |

MEMORANDUM OPINION

MARCH 14, 2024

## I.   BACKGROUND

On June 28, 2022, a grand jury sitting in the Middle District of Pennsylvania returned an indictment against Defendant Nicholas Perkins, charging him with one count of Bank Fraud, in violation of 18 U.S.C. § 1344, and one count of False Loan Application, in violation of 18 U.S.C. § 1014.[1] On July 13, 2022, Perkins appeared before United States Magistrate Judge William I. Arbuckle and pleaded not guilty to all charges[2] and Judge Arbuckle ordered Perkins released pending trial subject to certain conditions.[3] Perkins now asks the Court to revoke three of those conditions: Condition 7(a) Perkins must submit to supervision by Pretrial Services; Condition 7(f) Perkins must seek permission from Pretrial Services to travel outside of

---

[1]  Indictment, Doc. 1. Perkins was also charged with one count of Wire Fraud, in violation of 18 U.S.C. § 1343, and one count of Unlawful Monetary Transaction, in violation of 18 U.S.C. § 1957; those charges were previously dismissed by the Court. Nov. 7, 2023 Ord., Doc. 39.
[2]  Plea, Doc. 12.
[3]  July 13, 2022 Ord., Doc. 14.

Pennsylvania, West Virginia, and the Western District of New York; and Condition 7(k) Perkins must surrender and not possess any firearms.[4] The Government opposes Perkins' request, which is fully briefed and ripe for disposition.[5] Trial is scheduled to begin on September 9, 2024.[6]

## II. DISCUSSION

The Bail Reform Act[7] directs courts to order the release, pending trial, on personal recognizance a person charged with an offense unless the court determines that "such release will not reasonably assure the appearance of the person as required or endanger the safety of any other person or the community."[8] If the court does make such a determination, the court may impose conditions of release which must be "the least restrictive further condition, or combination of conditions" to meet those ends.[9]

### A.   Pretrial Supervision and Travel Restriction

As Perkins does not claim that any request to travel outside of the area prescribed by Judge Arbuckle has been denied by Pretrial Services, the issue here is

---

[4]  Mot. to Modify Conditions of Release, Doc. 52.
[5]  Supp., Doc. 53; Opp'n, Doc. 59; Reply, Doc. 64.
[6]  Jan. 23, 2024 Ord., Doc. 57.
[7]  18 U.S.C. § 3142.
[8]  18 U.S.C. § 3142(b).
[9]  18 U.S.C. § 3142(c)(1). *See also* 18 U.S.C. § 3142(g) (factors to be considered).

a narrow one: whether the requirement that Perkins seek permission one business day prior to any such travel is overly restrictive.[10]

As an initial matter, Perkins' argument that his compliance with the conditions of release for nearly two years "demonstrates that these conditions are no longer the least-restrictive conditions" is not well taken.[11] Those who abide by conditions of release are not due a reward any more than those who abide by criminal statutes such as those prohibiting bank fraud. On the contrary, those who fail to abide with conditions of release are subject to increased restrictions, including detention. Further, as the Government notes, "[t]he safety of others, and the defendant's promise to appear at any future court dates, may be a *result* of these pretrial release conditions, and not evidence that the conditions are unnecessary."[12] Perkins' argument to the contrary is little more than a suggestion that the Court should toss away its umbrella because it is not getting wet.[13]

As Perkins notes, Pretrial Services "acknowledged from the time of Mr. Perkins' initial appearance that he presented a 'minimal risk of nonappearance and

---

[10] The Court notes that the conditions as stated in the form Order issued by Judge Arbuckle are more onerous than the conditions as described by Judge Arbuckle during the July 13, 2022 hearing setting those conditions. As the Government only defends the conditions as stated by Judge Arbuckle during the hearing, the Court will construe the parties' arguments accordingly. Further, though the Court will deny Perkins' Motion, it will clarify in its Order the conditions for the benefit of the parties.
[11] *Cf.* Supp. 10.
[12] Opp'n. 25.
[13] *Cf. Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 590 (2013) (Ginsburg, J. dissenting) (observing that removing statutory conditions of the Voting Rights Act that have worked and continue to work "is like throwing away your umbrella in a rainstorm because you are not getting wet").

danger to the community.'"[14] A "minimal risk" is not the same as *no* risk. On the scale of pretrial travel restrictions—ranging from no restrictions to detention—those imposed upon Perkins are appropriately minimal. Indeed, as noted by Magistrate Judge Arbuckle, the conditions imposed are less restrictive than those recommended by Pretrial Services.[15] Judge Arbuckle also said that he was "very comfortable with [Perkins] traveling around the [continental] United States."[16] In response to concerns raised by Perkins, Judge Arbuckle clarified that the travel could be for any purpose "as long as [Pretrial Services] know[s] where he's going."[17] He further stated that, in the event Pretrial Services denied any such request, that Perkins should advise the Court which would work to resolve the issue.[18] Practically, the condition imposed by Judge Arbuckle is little more than a requirement that Perkins notify Pretrial Services of any travel, and the least restrictive means to ensure his appearance as ordered by the Court.[19]

---

[14] Supp. 10 (quoting Pretrial Services Report, Doc. 59-1 at 4).
[15] July 13, 2022 Tr., Doc. 59-2 11:24-12:3.
[16] *Id.* 15:13-15.
[17] *Id.* 15:10.
[18] *Id.* 14:20-22.
[19] Magistrate Judge Arbuckle "require[d Perkins] to participate in drug testing and counseling as instructed by the probation department" with the understanding that they would not require Perkins to submit to testing "unless they had a reason." *Id.* 12:22-25. Rather, the condition was simply to allow Pretrial Services to order testing in the event they did perceive a problem. *Id.* 13:2-3. As explained by Judge Arbuckle, the travel restriction similarly grants Pretrial Services the authority to deny a request for travel if they perceive a problem, not arbitrarily.

**B.     Firearm Restriction**

Perkins argues that the prohibition against possessing a firearm as a condition of pretrial release is unconstitutional on its face and as applied to him because there is no historical tradition of prohibiting gun ownership by individuals facing pending criminal charges. In response, the Government insists that such conditions of release are consistent with the historical tradition of firearm regulation.

The text of the Second Amendment provides: "A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed."[20] Following the decisions of the United States Supreme Court in *District of Columbia v. Heller*[21] and *McDonald v. City of Chicago*,[22] federal Courts of Appeals in near unanimity adopted a two-step "means-end" test to access Second Amendment claims.[23] In *New York State Rifle & Pistol Assn., Inc. v. Bruen*, the Supreme Court declared that, "[d]espite the popularity of this two-step approach, it is one step too many."[24] The Court "reiterate[d] that the standard for applying the Second Amendment is as follows:"

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition

---

[20]   U.S. Const. amend. II.
[21]   554 U.S. 570 (2008).
[22]   561 U.S. 742 (2010).
[23]   *See New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1, 18 (2022) (discussing two-step test applied in the wake of *Heller* and *McDonald*); *Range v. Atty. Gen. U.S. of Am.*, 69 F.4th 96, 100 (3d Cir. 2023) (*en banc*) (same).
[24]   597 U.S. at 18.

5

of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[25]

Thus, after *Bruen* courts must "first decide whether the text of the Second Amendment applies to a person and his proposed conduct" then, if it does, determine whether the firearm regulation at issue "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."[26] It is undisputed that, following the decision of the United States Court of Appeals for the Third Circuit in *Range v. Attorney General United States of America* in which the Court held that "the people" of the Second Amendment refers to all Americans, the Second Amendment applies to Perkins and his proposed conduct.[27]

The burden then shifts to the Government to show that the regulation at issue—restricting the possession of firearms by those accused of crimes and subject to pretrial release—is part of the historical tradition of firearm regulation.[28] Perkins asserts that no such regulation could have existed at the time of the nation's founding because "the first attempt to restrict firearm access as a condition of pre-trial release came less than forty years ago" with the passage of the Bail Reform Act.[29] However,

---

[25] *Id.* at 24 (quoting *Konigsberg v. State B. of Cal.*, 366 U.S. 36, 50 n.10 (1961)).
[26] *Range*, 69 F.4th at 101 (quoting *Bruen*, 597 U.S. at 19).
[27] *Id.* Notwithstanding *Range*, Courts have uniformly held that "felony indictees are within the scope of 'the people' who have Second Amendment rights." *U.S. v. Rowson*, 652 F. Supp. 3d 436, 462-63 (S.D.N.Y. 2023) (citing *U.S. v. Kays*, 624 F. Supp. 3d 1262, 1265 (W.D. Okla. 2022); *U.S. v. Stambaugh*, 641 F. Supp. 3d 1185, 1189 (W.D. Okla. 2022)).
[28] *Range*, 69 F.4th at 103.
[29] Supp. 6.

"[h]istorical tradition can be established by analogical reasoning, which "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.'"[30]

Arguing that the restriction on possessing firearms while on pretrial release is facially unconstitutional, Perkins suggests that "*Bruen* requires the regulatory landscape be trimmed [not] with a scalpel, [but] a chainsaw."[31] For Perkins' facial challenge to succeed, he must show that "no set of circumstances exist under which the [restriction] would be valid."[32] To the extent that Perkins asks the Court to hold unconstitutional all restrictions on the possession of firearms by those subject to pretrial release, thus "call[ing] into question . . . the constitutionality of the entire Bail Reform Act,"[33] the Court declines that invitation.[34]

Courts addressing similar challenges post-*Bruen* have nearly uniformly held the imposition of restrictions on the possession of firearms by those facing pending criminal proceedings to be consistent with the Nation's historical tradition of firearm

---

[30] *Range*, 69 F.4th at 103 (quoting *Bruen*, 597 U.S. at 30).
[31] *U.S. v. Perez-Gallan*, 640 F. Supp. 3d 697, 713 (W.D. Tex. 2022), *aff'd,* No. 22-51019, 2023 WL 4932111 (5th Cir. Aug. 2, 2023)
[32] *U.S. v. Salerno*, 481 U.S. 739, 745 (1987).
[33] *See U.S. v. Wendt*, 650 F. Supp. 3d 672, 681 (S.D. Iowa 2023) (observing that finding firearm restrictions imposed as a condition of pretrial release unconstitutional would necessarily apply to other restrictions, such as those on travel and the prohibition of contact with co-defendants).
[34] *See U.S. v. Perez-Garcia*, 628 F. Supp. 3d 1046, 1051 (S.D. Cal. 2022), *aff'd sub nom. U.S. v. Garcia*, No. 22-50314, 2023 WL 2596689 (9th Cir. Jan. 26, 2023) (rejecting facial challenge to restriction on firearm possession based on pending criminal charges); *Holland v. Rosen*, 895 F.3d 272 (3d Cir. 2018) (holding that there is no constitutional right to monetary bail in favor of other non-monetary bail conditions).

regulation.[35] Given the difficulty of making "different judgment calls on reasonably contestable, highly abstract questions of historical analogy,"[36] the emergence of a consensus suggests that that the constitutionality of the restriction at issue is relatively straightforward.[37] In any event, the Court does not understand *Bruen* as

---

[35] *Perez-Garcia*, 628 F. Supp. 3d 1046; *Rowson*, 652 F. Supp. 3d 436; *Kays*, 624 F. Supp. 3d 1262; *Wendt*, 650 F. Supp. 3d at 681; *U.S. v. Fencl*, No. 21-CR-3101 JLS, 2022 WL 17486363, at *3 (S.D. Cal. Dec. 7, 2022), *aff'd sub nom. U.S. v. Garcia*, No. 22-50314, 2023 WL 2596689 (9th Cir. Jan. 26, 2023); *United States v. Jackson*, 661 F. Supp. 3d 392 (D. Md. 2023); *U.S. v. Slone*, --- F. Supp. 3d ----, 2023 WL 8037044 (E.D. Ky. Nov. 20, 2023); *U.S. v. Slye*, No. 1:22-MJ-144, 2022 WL 9728732 (W.D. Pa. Oct. 6, 2022); *U.S. v. Alston*, No. 523CR00021FLRN1, 2023 WL 4758734 (E.D.N.C. July 18, 2023), *report and recommendation adopted,* No. 5:23-CR-021-FL-1, 2023 WL 7003235 (E.D.N.C. Oct. 24, 2023); *United States v. Bartucci*, --- F. Supp. 3d ----, 2023 WL 2189530 (E.D. Cal. Feb. 23, 2023); *United States v. Posada*, --- F. Supp. 3d ----, 2023 WL 3027877 (W.D. Tex. Apr. 20, 2023); *United States v. Simien*, --- F. Supp. 3d ----, 2023 WL 1980487 (W.D. Tex. Feb. 10, 2023); *United States v. Now*, No. 22-CR-150, 2023 WL 2717517 (E.D. Wis. Mar. 15, 2023); *United States v. Stennerson*, No. 22-cr-0139, 2023 WL 2214351 (D. Mont. Feb. 24, 2023); *United States v. Gore*, No. 2:23-cr-04, 2023 WL 2141032 (S.D. Ohio Feb. 21, 2023); *United States v. Kelly*, No. 3:22-cr-0037, 2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022); *U.S. v. Trevino*, No. 2:23-CR-00066 RB, 2023 WL 8237053 (D.N.M. Nov. 28, 2023). *But see Stambaugh*, 641 F. Supp. 3d 1185; *United States v. Hicks*, 649 F. Supp. 3d 357 (W.D. Tex. 2023); *United States v. Quiroz*, 629 F. Supp. 3d 511 (W.D. Tex. 2022).
The Court notes that several of these cases address 18 U.S.C. § 922(n)'s prohibition on the transport or receipt of firearms by those under felony indictment, rather than mere possession of firearms by such individuals. *E.g.*, *Jackson*, 661 F. Supp. 3d at 414. Given the contours of the restriction at issue here as well as the significant overlap in the historical analysis, the Court finds that such cases are nonetheless instructive.

[36] *See Jackson*, 661 F. Supp. 3d at 407, 413 (noting that judges are not historians and ill-equipped to conduct a searching historical analysis for the countless federal firearm cases) (citations and quotations removed). *But see Bruen*, 597 U.S. at 31 ("We see no reason why judges frequently tasked with answering these kinds of historical, analogical questions cannot do the same for Second Amendment claims.").

[37] *Cf. Jackson*, 661 F. Supp. 3d at 413 (noting that "a split is to be expected" following *Bruen*); *Bruen*, 597 U.S. at 26 (observing that, in some cases, the historical inquiry will be relatively straightforward).

requiring District Courts to conduct a historical inquiry in each case any more than courts are required to do so in cases raising other constitutional issues.[38]

Though this Court is not bound by the decisions of other District Courts, it would be injudicious, in the face of a broad consensus of courts across the country, for this Court to presume that it could, independently, better conduct the relevant historical inquiry.[39] Thus, this Court adopts the consensus view that the inquiry for firearm restrictions imposed as a condition of pretrial release remains the same post-*Bruen*: What restrictions, if any, are to be determined by an individualized determination according to the factors set forth in the Bail Reform Act.[40]

To that end, the Court begins by defining the condition at issue. Like the travel restriction, Magistrate Judge Arbuckle's order setting Perkins' conditions of release does not prohibit him from possessing firearms in all circumstances. Rather, Judge Arbuckle clarified that Perkins could request and Pretrial Services could grant permission to Perkins to possess a firearm within its discretion.[41] And, as above, Perkins does not claim that he has requested and been denied such permission.

---

[38] For instance, courts do not revert to first principles as a matter of course when defendants, as Perkins had previously, raise Fourth Amendment issues. Nov. 7, 2023 Mem. Op. and Ord., Docs. 38, 39.

[39] If the Court were inclined to independently conduct the relevant historical inquiry, the time and judicial resources required would result in the Court's decision—if not rendered moot by the Supreme Court's forthcoming decision in *United States v. Rahimi*, No. 22-915—coming too late to be of much use to the parties, as trial is scheduled for September 2024.

[40] *Wendt*, 650 F. Supp. 3d at 689.

[41] July 13, 2022 Tr. 16:12-23.

The Court finds that the restriction imposed by Judge Arbuckle is sufficiently tailored to address the minimal risk of danger posed by Perkins. While the Court appreciates that Perkins' criminal history—two charges for simple assault and a DUI over twenty years ago—is relatively limited and antediluvian, the Court is also mindful that Perkins has not been facing a felony indictment in the intervening years. Therefore, the Court agrees with Judge Arbuckle that a restriction on the possession of firearms for the purpose of ensuring the safety of the supervising probation officers is appropriate.[42]

### III. CONCLUSION

For the foregoing reasons, Defendant Nicholas Perkins' Motion to Modify Conditions of Release is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[42] *Id.* 16:14-16.